MOMANY v. PERE MARQUETTE RAILWAY COMPANY.

1. Negligence—Automobiles—Railroads.

In an action by automobile passenger against railroad company, if sole cause of accident is negligence of plaintiff's driver or no negligence on part of defendant in operation of its train is shown, plaintiff may not recover as a matter of law.

2. Railroads—Negligence—Directed  Verdict—Evidence — Crossings—Warning.

In automobile passenger's action against railroad company for injuries sustained in accident at 1 a. m. on a rainy morning at crossing where gates were operated from 7 a. m. to 11 p. m., where motorist had clear view in direction from which defendant's train approached for over 70 feet, train whistle had been blown, bell was ringing and headlight lighted on train moving at 18 miles an hour, and all warnings required by public utilities commission were given, directed verdict *held,* proper because of failure to show negligence on part of defendant.

Appeal from Berrien; Evans (Fremont), J. Submitted October 5, 1937. (Docket No. 4, Calendar No. 39,436.) Decided November 10, 1937.

Case by Sarah Momany, guardian of the estate of Blanche Momany, a minor, against Pere Marquette Railway Company, a Michigan corporation, for personal injuries sustained in a collision between the automobile in which she was riding and defendant's train. Directed verdict and judgment for defendant. Plaintiff appeals. Affirmed.

*Wolfe & Vogel* and *White & White,* for plaintiff.

*John C. Shields* and *W. K. Williams* (*Gore, Harvey & Fisher,* of counsel), for defendant.

North, J. Plaintiff, a minor, by her duly appointed guardian, brought this suit against the defendant railroad company to recover damages for injuries sustained by plaintiff in a railroad crossing accident resulting from a collision between defendant's locomotive and an automobile in which plaintiff was a passenger. At the conclusion of the proofs the circuit judge directed a verdict in favor of the defendant and plaintiff has appealed.

The reasons assigned by the trial court for directing a verdict in favor of defendant were that (1) there was no testimony tending to establish actionable negligence on the part of defendant, and (2) plaintiff was guilty of contributory negligence. Stated in the aspect most favorable to plaintiff the facts and circumstances surrounding the accident were in substance as follows:

The accident happened in the city of Benton Harbor at the intersection of Willow Drive and the tracks of the defendant railroad company. At this crossing there are four lines of track, the two inside tracks being defendant's main line tracks, the northerly one for westbound and the southerly one for eastbound trains. Approaching this crossing from the north the view to the east is not badly obstructed, but a factory building on the west side of Willow Drive blocks the westerly view. Immediately to the south of the factory building is Graham avenue which separates the building from the railroad tracks. From the southerly wall of the factory building at the corner of Graham avenue and Willow to the northerly rail of the first switch track is 35 feet; from the same point to the northerly rail of the westbound track is 52½ feet; and to the northerly rail of the eastbound track is 77 feet. In accordance with an order of the public utilities commission, safety gates are maintained at this crossing, but no other mechanical, visible or other means of warning is provided. These gates are operated from 7 a. m. until 11 p. m.

About 1 o'clock on the morning of October 6, 1935, plaintiff, riding in the front seat of a Chevrolet sedan driven by a young man named Clarence Poe, approached the crossing from the north. It was raining and the pavement was wet, and when the car

neared the crossing the driver slowed down to about 10 miles per hour. While the driver was familiar with this crossing and had passed over it on many occasions, he did not know that the safety gates were not operated during the full 24 hours of each day. As he approached the crossing he heard a whistle, but he thought it was the whistle of a switch engine. As he neared the crossing he looked to his left, then he looked ahead to see if the gates were down; and thereafter he looked to the right. As indicated above, the view to the west was obstructed by the factory building, but after passing the southerly wall of this building the driver's view was unobstructed while he traveled across Graham avenue, the first switch track, the westbound track, and to the track upon which defendant's eastbound train was approaching, a distance of approximately 70 feet. When nearly on the eastbound track the driver of the automobile looked for the first time to his right, saw the flash of the headlight of the approaching locomotive, and instantly the accident occurred. It thus appears that for a distance of four rods and more over which the automobile passed to the point of collision the approaching train was within the view of plaintiff and the driver of the automobile. The headlight on the locomotive was burning, the bell was ringing, and the whistle was blowing. At the rate at which plaintiff claims the automobile was being driven it could have been stopped in a space of 10 feet. Notwithstanding the facts above set forth, neither plaintiff nor the driver of the car saw the train which was approaching at the rate of approximately 18 miles per hour until too late to avoid the accident.

If the sole proximate cause of this accident was the negligence of the driver of the automobile, plain-

tiff cannot recover. Or, stating it in another way, if there is no testimony tending to establish negligence on the part of the defendant, the trial court was not in error in directing a verdict in its favor. The negligence alleged by plaintiff is that because of the dangerous nature and condition of the crossing, in view of the volume of travel on the street, and the obstructions to free vision at the crossing, it became and was the duty of defendant to operate the safety gates during all hours of the day and night, or to maintain and operate some other suitable visible, audible or mechanical device as a means of warning; and further that it was defendant's duty to operate its trains when approaching this crossing in a prudent and careful manner so as to avoid causing injury or harm to persons lawfully upon the highway. Violation of these respective duties is alleged.

In appellant's brief it is contended that notwithstanding the safety gates were maintained and operated in full compliance with the order of the public utilities commission, still there was testimony tending to show defendant was guilty of negligence in failing to provide more adequate protection for the public in using the street at the point of this crossing because it is an extra hazardous crossing. In directing a verdict the circuit judge instructed the jury as follows:

"I instruct you under the undisputed evidence in this case and viewed from the light most favorable to the plaintiff, the plaintiff has failed to show that at the particular time and place in question this crossing was a special or extra hazardous crossing which required additional or other safety devices or warnings other than those indicated and required by the public utilities commission.

"I further instruct you there is no evidence in this case which as a matter of law, if believed by you, would constitute negligence on the part of the defendant in the operation of its trains. The bell on the engine was ringing, the warning crossing whistle had been blown, the headlight was burning, the rate of speed of the engine was not as a matter of law unlawful or negligent."

A careful review of the record satisfies us that the trial judge was fully justified in giving the above quoted instructions to the jury. While, as appears from the facts hereinbefore stated, the view of one approaching this crossing from the north is somewhat obstructed, particularly in a westerly direction, it conclusively appears that there is ample opportunity for the traveler on the highway to obtain a full view of a train approaching from the west on defendant's eastbound track while he is in an ample zone of safety. As noted above, it is appellant's contention that this crossing is one of an extra hazardous character. In this particular appellant relies upon testimony that five regular trains pass over this crossing in one direction or the other during the hours when the safety gates are not operated and that occasionally, "probably once or twice a week," there is an extra train, and sometimes there is use of these tracks by switching crews; that there is considerable highway traffic during such hours, and that there is some confusion from the noise and lights of factories in the vicinity. Notwithstanding each and all of these circumstances the conclusion would not be justified by such testimony that the crossing is one of an extra hazardous character, such as to render defendant negligent in not providing safeguards in addition to

those ordered by the public utilities commission. Further, there is no testimony in this record tending to show that the defendant was negligent in the manner of operating its train. The circuit judge was correct in giving the charge to the jury above quoted and in directing a verdict in favor of the defendant on the ground that there is no testimony in this record tending to establish negligence on the part of defendant which was a cause of this accident. The judgment entered in the circuit court is affirmed, with costs to appellee.

Fead, C. J., and Wiest, Butzel, Bushnell, Sharpe, Potter, and Chandler, JJ., concurred.